This is David Rosenthal on behalf of the Painters Union. I'd like to reserve 10 minutes for rebuttal. This case is fascinating for me because at least 10 or 12 of the cases cited in the briefs are cases I've argued before this Court. I'd like to hope I can get it straight this time. It's complicated and there's a lot of history here. I'd like to begin by focusing on what the Board said, which I think frames the problems both from the Board case as well as the petition for arbitration. And that is the disgrace that this dispute had to be resolved in an appropriate form, whether it be through mutual accord or by recourse to the contractual dispute resolution. And I think that's the core of this case. And I'd like to take that phrase, contractual dispute resolution, and now address the petition to compel arbitration. Before I do that, I'd like to point out that what the Board said was that the parties, meaning the union and FSI and JNR, I'm going to use JNR to refer to the three contractors that are part of that group, and FSI is the other contractor. So you're using JNR collectively for the three and FSI is the other contractor. Mr. Lenz is a client of FSI and the others are Mr. Smith's. Although two of them, he's not representing them in this proceeding, but they're part of it. And that is that what the Board found was that FSI made no efforts to resolve this dispute by mutual accord, ducted, and therefore found that they had not acted in good faith. What I need to do is address that issue, but I will address that later as to the other two employers. I want to go back then to contractual dispute resolution as to what those words mean, and obviously that's a question the Court's going to have to address the Board to some degree. It's my view that if you look at those words, they clearly mean, and I don't think that can be disputed, that a contractual dispute resolution mechanism is grievance and arbitration. And if one actually takes those words and shepherdizes that phrase, you'll see many Board cases and many court cases that use that phrase both in the labor context and the commercial context to refer to some kind of arbitration process. So what it seems to me the Board was saying was that this dispute about how this card check procedure would be resolved, and there was a dispute, had to be resolved either by agreement of the parties or through this contractual dispute resolution mechanism. I'm adding the word mechanism. And so what the Board is saying is that arbitration was an appropriate means to do this. They didn't directly say the word arbitration. They used that phrase. And that just takes me back to 1964 to Carey v. Westinghouse. And there's an interesting history about Carey that I kind of want to address because I think it helps here, and that is that in Carey you had two competing unions, one union saying those workers should be represented by our union, and the other union saying they should be represented by us. And so the question is whether the first union that sought to change the representation of the second workers, whether that union could force arbitration in that dispute. If finally that was a representational dispute or a jurisdictional dispute and the Supreme Court and the courts in New York refused to compel arbitration on exactly the problem, here they say, well, that's a representational matter and the Board should decide it. The Supreme Court said, nope, that we will order arbitration because that's the way we resolve industrial dispute decisions and maybe that will help resolve it, maybe it will lead to a result. But it was very clear, and this is what I told the Court when I was here last time, that upon the issuance of a Board decision that would trump or supersede or control any arbitrary decision. So I think Carey teaches us very clearly that I would conceive that there is a representational dispute between the union and these employers. That representational dispute is whether we've established 90-day status. Now, when I say it's representational, I want to hedge that slightly because it sort of isn't clear that it's a representational dispute because the union already represents the workers. Well, this isn't really helping me. All right? And I'm just going to say this because we're granted rehearing, obviously, because we think that there are things to talk about. And so I really want to focus on if it's my understanding is even if something is representational, that parties can contract to handle it via arbitration. And are you saying no on that now? No, I'm saying yes, absolutely, that it can be representational and the parties can contract to resolve that issue. But furthermore, they can contract to resolve disputes over that by arbitration. And that's really the lesson of Marriott. I think what unions understood after Marriott was, with all due respect, don't let these disputes be resolved by district court judges. Agree with the employers that if there is a dispute arising out of this representational process, agree to do it through arbitration. Please, Carey's right. Well, let's say if they didn't have a contract here, then it would be representational. Is that correct? Absolutely correct. So the fact that there is a contract and it can be handled that way, and therefore if it goes to arbitration, the arbitrator is going to decide probably some representational issues inside there that the parties have contracted for that so we don't need to concern ourselves. Is that what you're saying? Yes. And if that's what the cases say? That's exactly what they say. I think the top judge speaks, not, you know, not sort of union, employer, employee speak here. You're exactly right, Your Honor. And if you actually look at the four cases that have dealt with this in this circuit, and those are Haig-Berberian, the Dariano case, the Stevens case, Valley Engineers, and another case which is incitement brief, it wasn't reported, it was an SEIU case that I lost before this court a couple of years ago, in which arbitrators decided issues, but this court refused to enforce each one of those decisions because it conflicted with the board decision. But there is no case cited here where this court has refused to compel arbitration of a dispute that is representational in nature, because Kerry says that can go to arbitration and be arbitrated, but ultimately whether the arbitrator's decision is enforced. Well, what's going to happen? Let's just take the hypothetical. FSI was found to have acted in bad faith, and as a remedy for that was ordered by the board to grant the representation that they had to. That was the punishment, as it were. All right. Now, there's an issue here whether we even have jurisdiction to hear that in light of the Sambo case and all of that, but let's assume that that stands, but then also assume that the court decided that it was the first case that we heard should have been referred to arbitration, and let's say the arbitrator decides that the card checks were not complied with with regard to FSI. How do we square that with what the board did? Because the board's already ordered them to grant them, what is it, 9A representation, right? Right. And the answer is that- But what if the arbitrator says the card check wasn't, you know, it's contractual in looking at it saying that they didn't comply with the card check, so it wasn't valid, and therefore, so what do we do with that? Well, that creates a different conundrum, which this Court addressed in a case that's not referred to in the brief. There's an old case from the 70s. Well, I don't – I just want to know, would that be an inconsistent result? There is a clear resolution to that. Well, just a minute before you get there. Is that your position, that FSI goes to arbitration? Yes, because we want to arbitrate with both of them because we think we can get additional remedies. And the Supreme Court in the Steelworkers Trilogy said you can arbitrate it even if it's sort of a frivolous case because we think an arbitrator will do two things for us. One is say that we complied with the contract language, which is important for you in the future. And then number two, the arbitrator has the power to offer additional remedies here, such as compliance with the contract during the period or other remedies. So does it change how long the representational period is from the arbitrator, and might that be different than what the board says? Probably not, but there are doctrines in which you can ask for. But they say you don't comply. You didn't comply. The arbitrator says you didn't comply. And is that inconsistent with the board already saying that FSI as a penalty has to grant 9A representation? The answer is that the board decision enforced by this court would trump an adverse decision of the arbitrator in that sense. And this court has already ruled that where there is a court decision or a board final decision, then a subsequent board decision cannot be enforced because it's barred by this collateral estoppel raised due to counterprop. But the more important case is the reverse one, Your Honor, which is what do you do with the other three that the board has not found? So what you're saying is if we affirm the board on its findings against FSI, but then we refer the original case to arbitration and the arbiter decides that the card check wasn't valid, our decision affirming the board trumps. They still have to acknowledge 9A representation. That would be my position. Well, is it based on the law or is that just your advocate position? That's what NLRB v. Hayman says. And one can also read into the recent decision of this court in the Granite Rock case dealing with these kind of collateral estoppel problems. If you can't tell, I don't want to see you all again. This is the second time, so like I said. I want to go to the other employers where it's more interesting, in a sense, because there we have no finding. So we say we get to go to arbitration and let the arbitrator decide, did we comply with the card check procedure and did we establish 9A? And what Carrie says, and this is what's kind of fun about this case, is that there are ways employers can prevent arbitration. That is, there are ways they can get a board decision that would either foreclose arbitration or trump it. And Carrie lays out that road map. And in this case, it would have been very simple for JNR or any of the other employers to file what's called an R.M. petition and ask for an election. If the union won the election, we would have been 9A. If we'd lost the election, then we couldn't vote. Well, it didn't happen that way, and you went to the board originally. True. And the board said, the ALJ said that this is essentially a contractual issue and dismiss your charges. And then the matter landed over here. And so you originally characterized this, as I understand it, as an unfair labor practice and as a refusal to bargain. And that's the way the board essentially thought with respect to FSI. And now you're telling us that you think that that is incorrect and that FSI should have to arbitrate the meaning of the contractual provision so that you have a shot at having shown majority status, or what? Because we have a right to arbitrate the question of whether the contract was complied with, to determine how the contract works, and to ask the arbitrator for additional remedies that were granted by the board. We can't ask for anything inconsistent with what the board has done. So I'll tell the arbitrator, the board has already found that we have 9A status. We proceed from there. I guess I'm just missing something. There is an order now from the board, is there not? In some sense, our going to arbitration of FSI is probably a waste of time. To some degree, not important. That's why I asked you that quite a while ago in this discussion. I'm trying to answer this as a principled position because this case has a lot of ramifications. On a principled position, we could choose to do so. But should the board's decision be affirmed, I'm not sure there's a lot of reason to do it. It's the other three employers where we obviously have. Well, should the decision be reversed, there's not a lot of reason to do it either because it would have no effect. If the arbitrator is reversed, you already have a decision from the NLRB. Because I think then that would interfere with what would be our right to make that decision at some point. I would be saying there is a difference between the recognition you're entitled to under the board's bargaining order versus under the collective bargaining order. And what is that? I don't think there's any effective. Because if it's not different, then it's moved. There isn't. The effective difference is that if an arbitrator says we established an IMA status in January of 2007, then the employer had an obligation to bargain from that date forward. But the remedy is they follow from that. Because all the board order at this point says as to FSI is that their withdrawal of recognition is bad in order for them to bargain. So it would be a larger period of 9A status. No. The board's order does reach back to when they withdrew recognition in January of 2007. But I'm entitled to ask an arbitrator to do more than simply say determine that we have 9A status. What more can you get? What more under the law can you get? I can ask the arbitrator to tell these employers to reinstate any conditions of employment that they changed, which would violate their duty to recognize this as a 9A status. I could ask the arbitrator to restore any benefits or wages that were lost to employees. I could ask the arbitrator to award interest on that. I could ask the arbitrator to find that in the future that the employers comply immediately with any such request. I understand that you'd like to have them together. But the board put them asunder and treated them quite differently. And the question, I would think, from at least one point of view, is whether there's any reason why we should disagree with the basis on which they said that they should be treated differently. And I'm having a little trouble seeing, based on the record, why there's any reason to do so. That's the second part of my argument. The first part is with Cary, the petition for rehearing. I think Cary answers that. Let's go to the second part, which is the mutual accord. What the board says is that these disputes had to be resolved by mutual accord or by contract dispute resolution. And they said that FSI made no effort. They ducked us. They didn't even meet. And they took inconsistent positions and therefore acted in bad faith. So my burden is to show that the record establishes that the other employers acted in bad faith or that the board has misconstrued the law or made a statement that's inconsistent with the law to require them to explain themselves. And the record is replete with bad faith. Actually, more bad faith. But it was different as to FSI than it was to the others. The other two employers had more contact. And the objections the other employers had were different in terms of that the board seemed to say something that they had a reasonable interpretation that the person that counts the votes had to be someone that they both agree on. Right. And I've conceded that that is a dispute, a reasonable dispute, about that contract language. I have to because- So then why isn't the board right then? Because they focus on one factor. They say that at that meeting that day, Greg Smith raises two issues. And those are issues of contract interpretation. But what the board ignores is everything else in the record that shows bad faith. For example, the board- But isn't the standard of review being fairly deferential? Aren't you pushing-they're pushing a rock uphill with regard to FSI. You're pushing a rock uphill regarding the other two. The board clearly seemed to exercise some judgment and differentiate from the evidence in how it applies. Because the board can't ignore the record evidence, which I'd like to just detail. Keep in mind that the employers walked out that day. They refused to engage in any effort for a mutual accord. But what's critical is that the record establishes that after that, Greg Smith met with the union on five or six occasions. He continued to bargain, a sign of good faith. But when asked to discuss the issue of 9A status, they refused. He refused any further discussion of that issue. When you say they, who are you referring to? Greg Smith and his clients at those meetings. So when the board talks about- JNR. JNR. So when the board says this is to be resolved by mutual accord, I understand that. We asked them to resolve it by mutual accord. And it wasn't that we couldn't reach an agreement. They refused to even try. That is bad faith. Jamie Castini, JNR's principal, testified at 128-129, the supplemental excerpt, that, yeah, the employers refused to participate. The record reference about the employers refusing to reach, to even try to reach a mutual accord is at 139 of the supplemental record. In addition to that, Greg Smith asserted that this clause was illegal. Now, we know it's not illegal, so that was bad faith. We also have the following, which seems to me, again, another strong indication of bad faith. And what I'm asking for is not that this court find bad faith. I'm asking that it be remanded to the board to deal with these elements about which there's no comment in the board decision. If it's true that you can resolve it by mutual accord or contract dispute resolution, then the employers have refused both to resolve it by mutual accord, because they wouldn't talk about it anymore, and they've refused to resolve it by contract dispute resolution because they've refused to arbitrate this. Well, that's a little more complicated, but I want to point out one thing here. And that is that they've taken totally inconsistent positions, because when this was before the board, they argued, yeah, this is a contract dispute resolution matter that should be resolved that way. And then when I filed a petition to compel arbitration, they reversed themselves and said, no, it's not arbitrable. That is bad faith. And so the record is... But today we have mom and dad both in the room, so you have to argue, you know, we've got the board, we've got all of you, and we get to hear all of it. I'm trying to maintain to come to some consistent position here that the court can write decisions in these cases that make some sense here. And when I filed my appeal to the board, I didn't dispute the fact that there was a contract dispute issue. I said the board should not defer to it. I said the board should decide it anyway. But if the board wasn't going to decide it, I said refer it back to arbitration. So I think I've towed a consistent line here. It was JNR that towed the inconsistent line and acted in bad faith by first telling the board, yes, the ALJ was right, it should be arbitrated. And then when I filed a petition for arbitration, he says, no, it's not subject to arbitration. The district court judge agreed. This court initially agreed, which, of course, leaves us in the interesting position that if the court reverses and says, no, it's arbitrable, then you've got the board's footnote in which they say this court's initial decision doesn't change their decision. If this court finds it arbitrable, I think you're kind of forced to remand it to say to the board, now we're going to treat this, because it washes out that rationale from the board's decision. And the final issue in the case of the board's decision depended in any way on our decision. Well, that's what they said. They dropped a footnote in which they said it's been brought to our attention that this court decided this case. It has no. It's independent. It has no effect. Well, but the fact is if this court finds that it was arbitrable, it has some substantial impact, potentially on how the board looks at the case, because then they're faced with the argument that their refusal to arbitrate was in bad faith, because they had to arbitrate it under Kerry. So that's something the board has to look at in the first instance. Well, bad faith is different than a person being wrong or changing positions. And that, you know, the problem that, you know, I would say that FSI even, I've got questions about really if the board did, whether there might be an abuse of discretion in finding the bad faith there, but there's also the issue about they didn't file a motion for reconsideration, whether it's here at all. It's a pretty high standard that's set out to be bad faith. I understand that. And the fact that you've got three judges that have, you know, are going, you know, we're on round two with this, and you have all the, you know, this is not, it's not the most crystal clear issue. Well, I think the first case, the petition compel, is relatively crystal clear if you look at Kerry. But this other case is less crystal clear, in part because of the last argument I made, which I spent a lot of time briefing, which is the DECLUA problem here. What problem? DECLUA, D-E-C-L-U-A. DECLUA, DECLUA. I call it DECLUA. Since 1983, it's been DECLUA to me, and we've lived with it. And I just want to address that for one minute. What's interesting is that DECLUA, and without repeating this in great detail, DECLUA says that when a contract expires in the construction industry, there is no presumption that the union represents the employees because most of these cases arise in the context where their membership was forced under union security. Not true here. And so the question really is whether the board has to rethink DECLUA in light of the fact that this is a right-to-work state where everybody who joined the union did so voluntarily and also at the same time signed authorization cards voluntarily authorizing the union to represent them. So the question is whether voluntary union membership means something in a right-to-work state or doesn't. And I submit that in a right-to-work state such as Nevada, where union membership is not favored, for workers to stand up and say, I will voluntarily join the union, support the union, pay dues, means that there has to be some presumption of union support when the contract expires. Now, all I'm asking, because this Court should not address that in the first instance, is simply to remand to the board to explain why in a right-to-work state there shouldn't be a different presumption. I'd like to reserve the rest of my time for rebuttal. May I please record Thomas Lenz for Appellant, Foreign Solutions of Nevada. This is a case which involves a question of representational duty under Section 9A of the National Labor Relations Act. And since this panel ruled last year, the board did rule against my client. And it's our position that the board has failed to do its job, both in the unfair labor practice case and in the bigger scheme of representational issues generally. Because the board has ruled, we do agree that whatever happens at the board proceeding is going to trump the need for arbitration. We do not believe that arbitration is warranted. We stand by the ruling of the panel last year. But what is, I think, most important is, as the painters have pointed out in a Harvard Law Review article, this is a bad contract. It's not one that specified the details to achieve representation, the sorts of things that would give rise to Marriott, to St. Vincent, to those sorts of potential duties to arbitrate. But I want to focus on the board remedy. Because there was no grievance filed. If I'm having trouble with her saying that this is a bad contract, it has provisions in it with respect to the card check. It also says that there's disagreement there should be arbitration of those provisions. Why should we not abide by those provisions? Whether or not they're good provisions or whether or not they're sound or whether or not you would negotiate them again is kind of irrelevant. Because the contract does not speak to the very ground rules that are in dispute in terms of whether or not this is a 9A situation and whether a 9A relationship was ever created after January 31, 2007. But if they contracted to arbitrate representational issues, then it goes to arbitration. Even though, had they not contracted, it wouldn't go to arbitration. There were issues. I mean, there seems to be things in the contract that say that they've agreed to arbitrate the card check procedure, representational issues. There certainly is reference to expedited arbitration, but that's not defined. There is a... Well, it has a meaning in the context of the contract because there's a grievance procedure. And I would assume that would mean you don't have to go through the grievance procedure to arbitrate. Well, certainly if there is an issue that arises under the terms of the contract, it could be arbitrated. And it's our view that there are defects in the clarity of the contract. So you want us to essentially say there's no contract at all? No, we don't want that said at all. It was an ADEF contract. It expired by its terms. The issues that are in dispute as it relates to the card check are as they were when we discussed this a year ago. They are representational questions which the contract does not clarify and which an arbitrator would need to call upon National Labor Policy, the National Labor Relations Act to understand. But there are cases that say that if you contract that right away, it's okay. And that's what we're here looking at. Is that contract one of those contracts? It is not because with issues of organization, of representation, National Labor Relations Board and related authority is clear that you need to have a clear and unmistakable waiver. The board standard, for example, in Cigna Testing Labs, which talks about the Daniel Steining formula for voter eligibility, you need to have a clear and unmistakable decision by both parties to an election, to a representation proceeding, not to include certain people. Well, what are you asking that we do? What's the outcome? The outcome that we would like is that the arbitration. Could you throw some law in there too? Absolutely. Other than what your wish list is? Absolutely. Based upon Cary, we have a board ruling. It is a ruling we disagree with, but the board ruling controls. We agree with what the panel decided last year on arbitration. We disagree that there is anything to be, to remain for arbitration. I don't understand. How do you write our opinion? We decline to enforce the board's bargaining order because? I will certainly explain. Because there are two facets to this case, the first being arbitration, I would deny reconsideration. I would not change the ruling as to FSI. As to the? Because we previously ruled that, you know, we granted re-hearing. Right. This is before us. Nothing has changed, other than we have a board ruling. And we disagree with the board ruling because? You want us to say that we won't enforce it because? Because the board has essentially adopted a double standard. The board, with regard to FSI, found bad faith against my client because they accused it of dodging the union and not conducting a card check. The union conducted the card check on two hours' notice. On a day it knew that my client was not available, and on a day the union filed an election petition. We find that the union was guilty of bad faith, and so, therefore, it's a? I don't know how we do that. Well, we had filed separate charges against the union. Which did not proceed through the board. But as putting the issue into context, there is a pending election case right now in the Las Vegas office of the National Labor Relations Board. The union filed a petition for an election on January 30, 2007, and we also filed an election petition. And we relied upon the board to allow our employees to vote. Well, I just want you to answer my question. What is the end result of what you want us to do? There's no arbitration, we reverse the board, and then what happens? What's left out there, and who's going to resolve it? The result that we want is that the board ruling is rejected, enforcement is denied, and my client no longer has any bargaining obligation after January 31, 2007. So, no card check, no arbitration, no bad faith, hallelujah. No bad faith, no card check, because the card check process was not agreed upon within the period before January 31, 2007. But who's making that decision? It should be the board. But it didn't. It didn't. And it isn't going to. And that's why I say they have failed to do their job, because the way 9A is typically decided is by an election. But if you're – I don't even know how you get – I'm struggling with how you even get to argue about the bad faith here, because we've got precedent, NLRLB versus Sambo Restaurant, that you can't just bring this up in the first instance on appeal. You know, you claim that you couldn't have known that the board was going to do what it did, but Sambo basically says you have to bring it up in a motion for reconsideration, which you did not do. So, how do we get around our precedent to even let you talk about this to us? There is no new fact, there is no new law that would have changed the board's point of view. Well, no, that's not an acceptable answer. If Sambo – you didn't file a motion for reconsideration. Correct. All right. I have to follow 9th Circuit precedent, and sometimes it pains me greatly, but I have to. How do I not follow Sambo and let you talk about this? Well, it's a fairly universal principle that you give the agency a chance to decide whether or not – to decide, you know, claim that it was wrong in its decision before you can go to court and challenge it. This is not unique to the board. How do you get around it? The issue of whether the board should have ruled against my client is one that the board told us they were going to enforce in court. Okay. They came to us as soon as the decision came down, and they told us, you're either going to comply or we're going to enforce. And, in fact, you know, we looked at challenging it, and before we even filed our paperwork, the board had that communication with us. How much time do you get? I get 15 minutes, and I'm reserving five for rebuttals. Oh, okay. Did we start at 15 minutes? I would like to add a few comments with regard to the board decision. It failed to follow the Daniel Steine formula. The construction industry provides for a mandatory waiver. Essentially, you can have representation by election, by voluntary recognition, or in rare cases where there are other pervasive unfair labor practices, a bargaining order. There are no other pervasive unfair labor practices. There were no other allegations but for FSI allegedly failing and refusing to recognize the union as a 9A representative after January 31. So there really is no rule to glean from this. It's a slapdash ruling with inconsistent results against FSI as compared to the other employers. We did not walk out of any meetings. So, again, it's our view that the board ruling is flawed, and arbitration should never be an issue because the board has acted, although we want that ruling changed. Okay. You have about five minutes left. Thank you. Can you please report? My name is Stephen Goldstein, attorney for the National Labor Relations Board, which is seeking enforcement of its order against FSI and which is opposing the union's petition for review. Now, the board found, first of all, that FSI violated the act by refusing to recognize the results of a card check and by refusing to grant 9A recognition to the union. So the first question before the court is whether substantial evidence supports that finding. Now, there's no dispute that it is an unfair labor practice for an employer to fail to live up to a contractual agreement. Does that end the first issue, whether we should even review it? With respect to FSI? Yeah. Well, in fairness to FSI, it's our position that you lack jurisdiction to consider the argument that even if FSI violated the act, a bargaining order is not appropriate. We take the position that they waive that. But in fairness to them, they have preserved the argument that they did not violate the act at all. All right. So I think it is fair game. Now, as I said, in Marriott, this court squarely held that it is an unfair labor practice for an employer to fail to live up to a contractual agreement to grant 9A recognition to a union based on a card check and rule of an election. And that's exactly what happened here. FSI failed to live up to the contractual obligation set forth in Article IV when it failed to grant the recognition, even after a third party certified that the union had indeed obtained cards from a majority of its employees. Now, FSI argues that it just never agreed to the type of card check that the union conducted, and therefore it had no contractual obligation to grant the recognition. The problem with that argument is that it was not acting in good faith pursuant to any interpretation of Article IV when it took those actions. Why? It failed to contemporaneously raise any contract-based offenses. It repeatedly dodged meeting with the union. And at the hearing, its vice president admitted that its position the whole time has been that the only way to determine whether the employees wanted 9A status for the union was to go through an election. And that position is inconsistent with any possible interpretation of Article IV, because Article IV on its face provides another way to get 9A recognition besides an election, namely a card check. Alternatively, FSI argues that the union failed to establish its majority. It points out that the third party who checked the cards failed to compare the signatures on the cards to signature exemplars. But it ignores that FSI's vice president admitted that he had no doubt that a majority of the employees had signed cards, and FSI stipulated that it did not dispute the eligibility of the card signers. Well, do you think that the evidence was different as to FSI as to the other employers? With respect to their good faith, most certainly. I mean, the FSI claims that they're being treated because before this court, they're raising the same kinds of defenses that the non-FSI contractors are. We plead guilty to treating them differently, but the reason why we're treating them differently is that they acted differently. When the union demanded the card check, FSI did not contemporaneously raise any contract-based offenses. The non-FSI contractors did. When the union demanded the card check with respect to the non-FSI contractors, it's true that as the union points out, their lawyer first said it's illegal to do that. But he had no warning the third party card check demand was coming. As soon as the union said Article IV entitles the union to do just that, he read the clause, and then right then in the very same meeting as the card check was demanded, he immediately raised contract-based offenses by saying we didn't agree to the third party, we weren't consulted, we can't confirm they're neutral, and they raised the issue about the potential outdated nature of the eligibility list. Again, FSI never raised any contract-based offenses. At the hearing, at the unfair labor practice hearing, FSI's vice president admitted that its position the whole time has been that the election was the only way to determine whether the employees wanted to deny a status for the union. The non-FSI contractors never made any such admission, and FSI repeatedly dodged meeting with the union. The non-FSI contractors did not. Well, are you essentially, I mean, you're pointing out different facts in each of those cases. There's also a standard of review. Are you essentially arguing that the standard of review and the different facts is why we should affirm the board? Well, as Your Honor has already pointed out, the standard of review is quite deferential. The board's entitled to affirm it even if, you know, you disagree with us, would you have decided the case was an original matter, as long as the board's decision is reasonable. But with all due respect, these facts are undisputed. Yeah, what my, I'm a little, let me go back to the challenge ahead of me. With respect to your position on what FSI has preserved, do you believe that FSI can attack the findings of the board as unsupported by the substantial evidence? Yes, absolutely. I don't believe that they can attack the order that they. The bargaining. Remedy. The remedy. Even if you find it unrelatable practice, they say the remedy should be an election rather than affirming a bargaining order. We say that argument is weak. And it clearly is. Let me just go back to this issue of bad faith for a minute. I mean, it's black letter law, regardless of the context, whether you're talking about an unlawful discharge or refusal to bargain, the board only considers the defenses they were actually relying on by the employer in evaluating the legality of the employer's actions. It does not consider defenses that the employer might have or could have raised if it wasn't actually relying on them. And, again, its vice president's admission at the hearing proves that they were not relying on any interpretation of the contract to justify their refusals to submit to the card checking the grant recognition. So we quite clearly believe that substantial evidence supports the board's finding with respect to FS-9. I want to ‑‑ I would like to use some time to discuss hypothetically, and I'm not saying I'm not ‑‑ hypothetically, if this court were to reverse its original holding in the one where we granted rehearing and to say that this matter has to go to arbitration, is there any potential for inconsistency regarding FSI? Because the board's already ordered the remedy of 9A representation, correct? Now, what if the arbitrator says ‑‑ what if the arbitrator were to say that the card check, as part of the arbitration, that it wasn't valid or whatever? How do you ‑‑ what do you see as potential inconsistencies that could come out of this, or is that just the ‑‑ or how do you see, if there are inconsistencies, what trumps what? Well, in canter, I don't have all that much expertise to offer the court, because administrative agencies like courts only decide the issues that were presented to them, and the issue of whether this dispute was arbitrable was not presented to the board, because, again, it was not even a grievance file. But in any event, my reading of Cary is that although a dispute that is representational can go to arbitration, a subsequent board decision would trump it. And so here we have a board decision with respect to FSI which says that they have an obligation to recognize the union as the 9A rep. If for whatever reason you were to grant the union's petition for a hearing with respect to FSI and say that dispute should go to arbitration, we believe that an arbitrator would either be precluded from finding that the union is not the 9A rep, or if he were to issue such a ruling, we believe that it would be unenforceable. But the board order would trump that. Well, if we were to uphold the board's order, bargaining order, it wouldn't go to... We're trying to reach... This case got on two... It's the same dispute. It got on the two different tracks. They were... They sort of went up like this. It's unique in its posture because of, in my opinion, because of factors that hopefully will never happen again with respect to the personnel of the board. But if we were to enforce the board's order and say with respect to FSI that they have to bargain, then to be consistent with that, we would have to say that that is, that they don't go to arbitration as to the meaning of the contract on whether or not they've established majority status. Well, but the union's lawyer says that arbitration provides, is a form for other remedies that would not necessarily be inconsistent with what the board has said. And so the union's lawyer is saying that it's not moot, as it were, that the board has not covered everything. Yes, and again, I don't have any particular expertise to offer. What I can tell you is that it is true that the board does not have any authority to say, to speculate what the parties might have agreed to had they bargained back in 1997. Right. And so therefore, we're going to award back pay. The board has no authority to do that. The Supreme Court has held that explicitly. We don't have any authority to issue any punitive remedies. So, you know, Mr. Rosenfeld may be right. I don't know if he's right because, frankly, I don't know a lot about arbitration. But if he is right, then that would suggest that perhaps the issue is not moot. What I can say is that there's also law that suggests that when the board has previously resolved a dispositive representational issue, the courts will not compel arbitration to subsequently arbitrate the same question. So I guess the $64,000 question, which I'm going to have to pun on, is, is it the same question? Well, that's what has been driving us crazy. And I'm sorry. I can't help you. I can't help. So turning very quickly with respect to the non-FSI contractors, I think I've already explained why substantial evidence supports the board's finding that they were not acting in good faith. And, again, it's just black-letter law that when a union claims that an employer has violated the National Labor Relations Act by failing to abide by a collective bargaining agreement. You said that it supports they were not acting in good faith. I'm sorry. I meant to say not acting in bad faith. In bad faith. I apologize. Okay. Yes, I apologize for that. So when a union claims that an employer has violated the National Labor Relations Act by failing to abide by a collective bargaining agreement, the board will not find an unfair labor practice if the employer has a sound, arguable basis for ascribing a particular meaning to the contract. It takes the challenge action in accordance with the terms of the contract as it construes it. And it isn't acting in bad faith. Each of those elements is present here. The union has conceded in its Rule 28J letter that the board is correct that the non-FSI contractors have raised a reasonable interpretation. They were clearly acting in good faith pursuant to that reasonable interpretation because they contemporaneously raised their contract-based offenses. Okay. I'm still struggling with the relationship between these two cases because we have to solve this. If J&R was not acting in bad faith and was advancing the interpretation of the contract, then it would logically follow that they should now not bargain, but they should arbitrate with the union on the proper interpretation of the contract and the application of the contract. This is an argument that the union made to the board. The union argued to the board that because Article IV provided that any disputes concerning the meaning of this should be resolved through expedited arbitration, it was incumbent upon the employers to file for arbitration. The board rejected that argument because under the National Labor Relations Act, the party asserting 9A status has the burden of demonstrating it. And so it was the union that was seeking the 9A status here. So it was the party that should have filed the grievance, and they didn't file it. By the time- The board's opinion just sort of ends with, well, they weren't guilty of an unfair labor practice, but that still leaves us with the problem of what do the parties do now? And the board is not going to be of any help to us on that? Under the board's theory, you're saying there should be arbitration, or there shouldn't? The board did not address the issue because it wasn't presented to it. All I can tell you is that nothing in the board's decision is inconsistent or suggests that this dispute is not arbitrable. But, again, the board didn't hold that. And if the arbitrator were to rule a certain way and a party wasn't happy with that- All right. When we said previously that it was representational, was that inconsistent with the board's order? Well, I think parts of the dispute are representational and parts are not. I mean, the board found that the question of whether this particular card check complied with Article 4, that's a contractual question, and that has to be resolved through mutual accord or by resort to the grievance arbitration machinery. The union falls to the board and says, we ignored that after January 31st, the non-FSI contractors refused to bargain about- Well, but essentially, if we don't change our prior ruling, we leave the union without a forum because the board said it was contractual. Yes, and that's correct. And if we say it's representational, then that can't be right. Well, it can be. I mean, it's possible. I mean, what we say in our brief, and I think this is a fair reading of the facts, is that the predicament they find themselves in is entirely of their own making. Nothing prevented them from filing a grievance while the contract was still in effect. Nothing prevented the union from asking the non-FSI contractors to bargain about the dispute while the contract was in effect. They were represented by experienced counsel, and they didn't either. It simply is irrelevant as a matter of law that the non-FSI contractors may have refused to bargain after January 31st. Article 4 was part of an 8F collective bargaining agreement. What that means is that once that contract expired, there was no obligation to bargain at all. So what you're saying is if they get no remedy here, it's their own fault. Yes. Because they played their hand. They, you know, they rolled the dice, and it didn't work out. Yes. Yes, that's exactly what I'm saying. If I could just, in my final 25 seconds, just briefly address this. In the red, we'll give you 25 seconds. You're going up. Okay. With respect to the DECLA law point, it's our position that this is really a red herring. No useful purpose would be served by a remand, because regardless of how the Board would rule on that question, it wouldn't change the result. In DECLA law, the Board held that evidence of union membership is not evidence of majority support. It did not say that that rule only applies in a non-right-to-work state. So if you were to remand the case and the Board would reaffirm that rule, that obviously wouldn't change the result. But even if the Board were to change its mind and say, okay, evidence of union membership is evidence of majority support in a right-to-work state, it still wouldn't change the result. Because the law is that even if an employer knows that its employees want the union, it still doesn't have to grant recognition unless it contractually obligated itself to do so. And so the terms of the contract control. And Article 4 does not say that the employers must recognize the union if a majority of their employees are members. And the union knew it because when the union demanded recognition, it didn't say recognize us because a majority of your employees are members. Instead what it said is we've gathered authorization cards, we're prepared to conduct a card check. So in conclusion, the Board requests that the Court enforce the Board's order against FSI and deny the union's petition for review. Thank you. Good afternoon, Your Honors. Good afternoon. To address the issue of what should be arbitrated or not. For our benefit, we're recording. Do you want to say who you are and who you represent? I apologize. I'm Gregory E. Smith of the Lionel Sorenson College representing JNR. The union has deliberately, from the beginning of this case, confused the issues of what to be arbitrated or what not to be arbitrated. Its petition to compel. So let's not alone. The petition to compel arbitration says that it wants to arbitrate whether it achieved 9A majority status on January 31. But it also interprets and argues that it was told by the administrative law judge to arbitrate that issue. But that's not what the administrative law judge said at all. The administrative law judge said, if you want to, said that if you don't have a majority status, we're finding that, and there is no violation of the law, and there's no 9A bargaining relationship. Now, if you want to get one, what you should have done is arbitrated the issues of Article IV, what the procedures were. And you didn't do that. But then by petitioning the court for arbitration on the issue of 9A of recognition, it put itself into this corner, which resulted in the positions that we're all in today. And Judge Hunt, who denied their motion to compel, by the way, took them to task for that. He wrote in his decision that they had misconstrued and mischaracterized the ALJ's decision, and that their willingness to do that indicated that they were not going to be able to, that he was not going to compel them to arbitrate something when the ALJ never suggested anything like that. The other thing about the bad faith from JNR and others, Mr. Rosenfeld is relying on one page of the record, which is the excerpt of Record 139, in which he was questioning Smirk of the union, and Smirk said that I had refused to discuss the issue. And Mr. Rosenfeld asked, well, did you raise the issue with them? And his response was, we had mentioned that we had majority status. Of course, when he mentioned that, it was in the January 31 letter. But my point is, if you look at the board decision, which on page 3 of the board decision, the board rejected what that testimony was trying to show, what Mr. Rosenfeld was trying to say that that testimony showed. The board found further, at no time prior to the hearing did the union inform the employers of their, or their counsel, of the results of the card check, provide them with any copy of the certifications, or allow them to see the authorization cards. That is the finding by the board, and it's well supported, because the ALJ in this same decision, in footnote 12, had quoted Smirk in another context, when he testified just the opposite, where, if I could point that out to you, it's in footnote 12, where Smirk said, well, if they wanted to know the results of the card check, they could have asked us. What's your position with respect to what should happen now for your client? With respect to JNR, I think you should affirm the board and deny the union's petition to compel arbitration. So they are simply, have no contract, no obligations. That's correct. And that's not an unfair result, because the union is the one who brought this board charge. And don't forget, on January 31, there were eight companies involved in those negotiations. And they said they were going to do card checks on all eight companies, and apparently they did. But then they wrote us a letter, which never identified which four, for which they're claiming majority. So this dispute that they're now attempting to arbitrate never even occurred, never even was joined. We did not know what the union's position was of the card checks showed until May, when we went to the NLRB trial. For the first time, we saw that evidence. And it is that evidence that would have, if it had been presented during the term of the contract, may be presented as something to arbitrate. But by that time, the contract had expired. And as this court pointed out in its first decision here, an 8-F contract expiration really means something. It means the whole game is over. And so I just think it's important that we see that and see the... Well, I guess I understand the logic of what you're saying, except that the union sought arbitration here after the ALJ had said that essentially this is... I don't know how you would characterize it, but it seems to me the ALJ was saying this is a contractual matter that ought to be arbitrated. But she was talking about just the Article IV issue. The administrative law judge said three times, if you take a look at the last page of the board decision, she said, in essence, the majority employee authorization achieved under Article IV, the respondents were not obligated to recognize the union as exclusively... I'm sorry, you're reading from where? The ALJ's decision, which is page 15 of the board decision. Yeah, and you're on page what of that? Page 15, the last page. Does it start at the top, like the first paragraph, the charging party? No, ma'am. No, okay. It starts at the top. This is a two-column decision. I thought this was the order decision as well. I apologize. But if you look at the ALJ's decision, which is attached to the board decision... The first word is recourse. Is that right? Page 15? Oh, yes, on page 15, the first word is recourse. But I'm looking at the second column. Okay, that's where I am. And I said the first paragraph is the charging party. I apologize. I see it now. Okay. But if you look on the right-hand column there, that first big paragraph, the judge is saying three times that there is no 9A bargaining obligation. So that issue is done. And the only thing that the problem the union was facing then was they now have an NLRB decision. And the board, by the way, at page 5, affirms the ALJ for the reasons stated by the ALJ. Okay. And so when we get to the board's decision, there's just nothing left to arbitrate. It is clear that the issue was not joined during the contract term. And I think I said a minute ago this court pointed out the 8F contract.  Under Staunton itself, the board was obliged to find whether or not a 9A relationship had existed before the contract term ended. But as I said, it was not even joined in the latter. And the significance of the board's decision beyond that is that the reason they found no violation is not because they thought we were right on any of these contract clause issues, but because it was reasonable, and they cited two cases, Atwood and Merrill is one, and NCR Corporation, and those are cited in our briefs, for the proposition that if you have a reasonable position, then it's not an unfair labor practice to assert that position. And then when the union admitted, as it just repeated here, that we did have a reasonable interpretation of the contract, then there's no basis for that union to ask this court to turn around and order us to arbitrate something. It's not before you. Why is it not before us? I'm sorry. There's no reason for them to ask you to turn around the board decision with respect to J&R's. Okay. Let's assume, let's talk for a minute just about the order to go to arbitration. Yes, ma'am. Are we prevented in your judgment from reversing ourselves and now ordering that this issue should go to arbitration? Well, theoretically, I don't think. Why shouldn't we do that? First of all, Marriott is still binding, I believe, in this circuit, and I think those cases, which you relied upon before, I think that was correct. Regardless of whether you think now that a representation, the ultimate representation issue should go to arbitration or not, this Court has said before it does not. Well, but we've also said numerous times that a representational issue can be resolved via a contract. And there's a contract here. Is it your position that because there was no grievance filed, that they waived their right to go to arbitration? No. My position is that it doesn't matter because the board's already issued this decision. I mean, that is the one difference. I think the ---- Well, the board ---- Okay. Go ahead. Finish. I think your first decision was accurate because of the Ninth Circuit authority that says, it's my understanding that it says you don't arbitrate the ultimate issue of representation. All right. But the board said your clients didn't act in bad faith. But an arbitrator could award other things to the union, could it not? But that's why I made the distinction. The union never said you violated, you were in bad faith with respect to the provisions of Article IV or in any other way. And they never said that we were in bad faith during the contract term. Well, but this is what I'm not understanding. Isn't it possible to read the board's decision and its findings, which with respect to at least the board matters, are entitled to deference, that is saying that your client was relying upon an interpretation of the contract and, therefore, did not refuse to bargain in bad faith, but that that leaves open the question of whether or not contractually ---- and the board didn't say this, but I'm saying this ---- that leaves open the question for us to decide as to whether or not if you were acting in good faith on an interpretation of the contract that differed from the union's, which is what the board may have been saying, then that that is a dispute under Article IV that ought to be arbitrated. We did not have the benefit of the board's decision when we decided, when the case was before us earlier, and the union didn't have the benefit of the board's decision when it filed its original petition to motion, request to arbitrate. And so now we're trying to decide these matters on the basis of the entire record. And I think where you're ---- where one of the questions is coming from is that under Cary, there is a suggestion there that you can arbitrate the representational issue. But Cary doesn't really say that, but even if it does, Cary was a jurisdictional dispute between two unions. The employer had 9A contracts already with both unions, and the issue was who's doing the work. And the court suggested that they might want to arbitrate that because, especially in jurisdictional dispute kinds of questions, they want to see as many possible resolutions between the parties as possible. But nothing in Cary, and Cary even said, but that when the board issues its decision, it's going to control. It doesn't matter what you might have arbitrated. Has anyone relative to your client ever said that there should be 9A recognition? I'm sorry? Has anyone ever said relative to your client that there should be ---- that the card check should result in 9A recognition? That's exactly the issue that the union petitioned to compel arbitration on. That's the exact issue. I know, but no one's ever said that as to your client. As to FSI, the board ordered as a remedy that they had to ---- that that was the order of the board. I'm not asking you to reverse anything. Well, but there's a different issue as to FSI. No one has ever decided that issue relative to your client. That wasn't the issue before the board. Right. I agree with that. And then the issue before this court is whether to order my client to ---- I know, but that issue has never been ---- it wasn't determined by the board. No. No. And your position on that is too darn bad. Well, it's just too late. And that was the last one I was going to make. You know, they argued for the arbitration of whether or not they had 9A status. I just showed you that the board has already decided that issue in no uncertain terms. Now, in their petition to compel arbitration, for the first time, they say, well, we've got to look at this Article IV procedures, too, and all of the ministerial acts about Article IV. Well, that's changing the horse in the middle of the stream. That is what's prohibited by this court's prohibition against new positions on appeal, the Hoff v. J.P. Morgan case and the American title. You know, I mean, we've been fighting this case for three years on the basis of they want to arbitrate 9A. Well, we get a 9A decision from the board, and now they say, no, we want to arbitrate something else. Well, it is too late. It's wrong of them to do that, and I think J&R has not violated the law by refusing to do that. Thank you. You're out of time. I'm sorry. Are there any questions? Thank you. Let me see if I can sort this out simply from my point of view. Let's deal with the easy case, J&R. That should go to arbitration. Number one, the board's decision doesn't say, as Mr. Smith advocates it, that 9A, it says it should have been resolved in a different fashion. It doesn't resolve it. That's your reading of it. That's my reading. Number two, Kerry says it's arbitrable. Mr. Smith says that was a jurisdictional dispute. He just hasn't read the case carefully. The court was very clear that it had jurisdictional aspects and representational aspects and said it was arbitrable. So that's my position on the petition to compel arbitration as to J&R and the other two importance. And you didn't have to file a grievance in order to get arbitration. Well, he's wrong. What happened was the ALJ issued a decision in August or September of 2007. Not long after this all occurred, we then immediately filed a grievance. Now, there are many collective bargain agreements that have time limits to file grievances. There isn't one in this contract. It was timely. And even if there's a timeliness issue. That happened after the ALJ decision? Right. Because we took the ALJ. So we filed this, and even if the S.A. uses it, the question of the timeliness of our grievance, even if there was one, is for the arbitrator to sign off the court. That goes to arbitration. So that's sort of a frivolous point at this point. And then he says all this occurred after the contract expired. Well, this Court already in Newmont Mining consisted with Litton Industries. Again, in my case, Newmont Mining said as long as it arises out of the expired agreement, you can arbitrate it long after. So that solves that problem. FSI is a little more complicated, but I think I will just hinge it upon my position that we can go to the arbitrator. We may not. I mean, if the Court enforces the order, we may decide that at that point we've got enough. But we want the right to go to the arbitrator to ask him to clarify what the contract means for her, and to perhaps ask for additional remedies not inconsistent with what the Board has done. I'm sorry. I'm going to have to go backwards for a moment. I'm looking at the Board opinion. This is hard to read, but I think it's footnote 15. And it says no party filed a grievance or invoked arbitration. Are you saying that that is not correct? At the time that the ALJ issued her decision, that was correct. I'm not reading the ALJ. I don't think I'm reading the ALJ. I wanted to ask, Your Honor. I think I'm reading the Board decision. You are. I was going to explain that. At the time the ALJ issued her decision, that was correct, that nobody put in the record prior to the Board decision that a grievance was filed. So as far as the Board was concerned, that was correct. So that's a correct statement as far as the record was concerned. Are you saying that grievance is just hanging around somewhere? The Board doesn't seem to know about it. This is describing the ALJ's decision, is it not? Right. So that the footnote signal goes back to the description of the ALJ. Right. But, Your Honor, you're sort of correct that the Board was not advised of the pending proceedings until this Court issued its decision. So that's a correct decision. And it's partly because our position was that the employers had to file a grievance if they didn't like the results of the card check, not to get a procedural person for the arbitrator. This FSI, again, I just say that to be consistent, we have the right to arbitrate as long as the arbitrator doesn't do something inconsistent with the Board decision and the arbitrator has a right to grant us additional remedies or relief. Let me just turn to the Board case. Hey, Your Honor, you're being recorded, you know. Yes. Let me turn to the Board case. We agree that there were issues raised by Greg Smith, two of them. But in every case I've ever been involved in where there's a contract, it's really easy to raise issues. Does this mean that or does this mean this? So the Board says he raised two disputes about the card check, and I agree that they're contract disputes. I agree they should be resolved by an arbitrator. The question is, is there additional indication in the record of bad faith? And this according to Healthcare Services Employees Local 399 case is very clearly that in reviewing the record, you can't ignore that which detracts from the Board's findings. You can't ignore all the other evidence. That's universal camera, most recently discussed in Healthcare Employees in this case. And just to repeat, the other evidence of bad faith is the employers walked out on the 31st. And most critically, as the record establishes, we asked them to discuss this issue further, and they refused. They would not talk about it further. That's what John Smirks says in his testimony. And then Jamie Pacini, consistent with what, and this is important, Jamie Pacini says in the transcript, she knows that all of her employees are union members. The same thing that the Board is hanging its hat on with respect to what Mr. Price said for FSI. They all knew that these were union members. And finally, when we then seek to compel arbitration, these employers act in bad faith by saying that even though they supported the ALJ's decision that this was arbitrable, or at least a contract dispute, they then turn around and tell Judge Hunt and tell this court it's not arbitrable. That is not a change in position so much as it's bad faith to say something's not arbitrable, win, and then turn around and say, no, it's not arbitrable. It would be hypocritical of us to find it was in bad faith to induce us to do something we actually did. That's what you're arguing, that encouraging us to issue an opinion that we issued two years ago establishes bad faith on the part of the litigant. You know, you've made a valid point here that I'm asking them to find bad faith because they convinced you that they were right. And yet that's why I got that. I got that. I'll never be invited back if I do that. That's why you should be remanded to the Board to let them sort out, because I think they will then understand better that, for example, all these arguments made in resisting arbitration are really pretty much in bad faith, other than potentially not to raise all these other issues wasn't bad faith. So we are asking that the Court remand as to the three implorers, let the Board decide it, because there's all this other evidence, and we've got clue issues there that they've got, and file arbitration as to the other four implorers, as to the other implorers. Thank you. Thank you. Thank you. We'll hear the final rebuttal, I think. Is that correct? Yes. No grievance was filed. Months passed after the contract expired and after the ALJ ruled, and we received a letter demanding arbitration of the 9A issue. But no grievance was ever filed, and the ALJ's footnote to that effect is as valid now as it was then. There was discussion in the Board's argument about the majority. Who is the majority? And that Brian Price of FSI made a comment that a majority had signed the cards. All that needs to be referenced in the context of a single trust fund report from late 2006, and not the Daniel Steine period, which controls in the construction industry a two-year span. So by looking at a discrete one-month approximately period of time, you are looking at the Board disenfranchising employees who would have worked over a broader two-year span. A question came up about whether the union is without a forum. No, they could have filed a grievance. They could have identified articles of the contract that they felt were violated. Well, rather than they could have, were they required to? And if they are required to, is that a waiver of enforcing arbitration rights? Yes. What's your authority for that? Our authority for that is that I would say under any of the cases that we've talked about, Marriott, St. Vincent, if you're going to put forth an issue for grievances to go to arbitration, you file the grievance. You're arguing like it's an exhaustion requirement? Yes, it is. I don't know of any authority for that, though. Well, the contract itself speaks of grievances. If you look at Article 22, it speaks of filing grievances. Okay. And, again, the issue of bad faith with FSI is so discrete in terms of looking at a one-week period in January, when FSI was in dialogue with the union about the representational issue and when the union filed its own election petition. And we do not at FSI take the position that that is not distinct enough from the non-FSI employers to warrant the imposition of a bargaining order. Thank you. Thank you. Are there any further questions of any counsel? Thank you. We appreciate you all being here this afternoon. And all of these matters are taken under advisement. And that concludes the court session. Court stands adjourned. All rise. Thank you.
judges: Schroeder, Callahan, Cjj Lynn (Texas), Dj